APPEAL OF NEW YORK TRUST CO. ET AL., EXECUTORS OF THE ESTATE OF JOHN BALLOT, DECEASED.

Docket No. 6382. Submitted November 16, 1925. Decided February 4, 1926.

> 1. In order to confer on the Board jurisdiction of the subject matter of an appeal, the appeal must lie from the determination of a deficiency in tax, as defined in section 273 of the Revenue Act of 1924.
>
> 2. Where taxpayer filed a return and showed thereon an amount as the tax, and such amount is not increased by the Commissioner, there is not a deficiency, as defined by section 273 of the Revenue Act of 1924, notwithstanding a portion of such amount remains . unpaid and a claim for its abatement has been rejected by the Commissioner.

*Leo B. Kagan, Esq.*, for the taxpayer.
*M. N. Fisher* and *J. T. Dortch, Esqs.*, for the Commissioner.

### Before KORNER.

This is an appeal from an alleged final determination by the Commissioner of a deficiency in respect of income tax for the taxable period from April 2, 1922, to December 31, 1922, arising under the Revenue Act of 1921. The exact amount in controversy appears to be $40,134.03. The Commissioner moved to dismiss the petition for lack of jurisdiction in the Board, on the ground that the appeal is not from a determination of a deficiency, as defined by the Revenue Act of 1924.

### FINDINGS OF FACT.

1. John Ballot died at New York City, on April 1, 1922, leaving a will dated March 25, 1922, wherein he nominated and appointed the New York Trust Co. and Elsie Josina Ballot as executors and trustees under such will.

2. The New York Trust Co., as one of the executors of the estate of the said decedent, made and filed income-tax returns for the taxable period from January 1, 1922, to April 1, 1922, and for the taxable period from April 1, 1922, to December 31, 1922, as follows:

(a) Return (Form 1040) of the net income of the decedent for the period from January 1, 1922, to April 1, 1922, the date of the death of the decedent.

(b) Fiduciary return (Form 1041) on behalf of the estate of John Ballot, the decedent, showing the net income received by the executors for the period beginning April 1, 1922, and ending December 31, 1922.

(c) Individual income-tax return (Form 1040) for the estate of the decedent for the taxable period from April 2, 1922, to December 31, 1922.

3. An item of $108,750, which forms the subject of the controversy in the present appeal, was included by the executors, as current taxable income of the estate of the decedent, in the fiduciary return (Form 1041) and in the individual return (Form 1040) on behalf of the estate for the period from April 2, 1922, to December 31, 1922. The tax computed on this item and so reported in the returns just referred to was in the amount of $40,134.03.

4. The taxpayer paid a portion of this tax as thus reported. This payment appears to have been in the amount of $29,824.62. The remainder of the tax just referred to was unpaid when, on or about December 14, 1923, the executors filed a claim for abatement (in the amount of $10,033.52) against the unpaid remainder of the tax shown on the return, and at the same time filed a claim for refund of the amount of the tax theretofore paid on such return. This refund claim was for $29,824.62. At or about the same time these claims were filed, the executors filed so-called " amended returns " (on Forms 1040 and 1041), and in both such amended returns the item of $108,750 was eliminated as taxable income and a revised tax liability was therein set up by reason of such elimination.

5. On February 11, 1925, the Commissioner notified the executors that an audit of the income-tax return *for the period January 1 to April 1, 1922*, disclosed a deficiency in tax and that this deficiency was due to the fact that the item of income of $108,750 had accrued to decedent prior to his death and should have been reported in the return for the prior period, January 1 to April 1, 1922, instead of for the period April 2 to December 31, 1922, as it had in fact been reported by the executors.

6. On February 18, 1925, the executors filed with the Commissioner a protest against the proposed deficiency for the period from January 1 to April 1, 1922, called the Commissioner's attention to the claims for abatement and refund filed by them relative to the period from April 2 to December 31, 1922, and requested an explanation as to why no reference was made to these claims in the Commissioner's letter of February 11, 1925.

7. On March 14, 1925, the Commissioner, by letter, acknowledged the executors' letter of February 18, 1925, just referred to, and notified taxpayer that the Commissioner's letter of February 11, 1925, was sustained, i. e., that the item of income of $108,750 was properly allocable to the first period of the year 1922, instead of to the latter period in that year, that the claims for abatement and refund for the latter period, in respect of such income, had been allowed, and that proper adjustments would thereafter be made by

way of certificates of overassessment and credit. The executors were requested to indicate whether or not they asquiesced in the determinations and adjustments indicated, and were further advised that, if they did not so acquiesce, a hearing would be granted in the matter upon request of the executors.

8. On March 25, 1925, the executors indicated their dissent and protest to the determinations and adjustments just outlined above, and on April 24, 1925, a conference was held in Washington, between the Commissioner and the executors. Thereafter, on July 7, 1925, the Commissioner forwarded to the taxpayer two letters. One of these letters advised the taxpayer that the item of income of $108,750 had finally been determined to be income for the *second* period of the year 1922, i. e., the period from April 2 to December 31, 1922. This determination was in accordance with the manner in which it had been reported by the executors in the income-tax returns filed by them and first referred to hereinabove. That letter further advised the executors that their claims for abatement and refund covering this second period of the year 1922 would, accordingly, be rejected and that such rejection would appear on the next approved schedule.

9. In his other letter of July 7, 1925, the Commissioner advised the executors that he had reversed his ruling contained in his letter of February 11, 1925, and had determined that the item of income of $108,750 properly represented taxable income to the estate for the period April 2 to December 31, 1922. The letter added: " You may, therefore, disregard office letter dated February 11, 1925." The closing paragraph of this letter of July 7, 1925, contained the following:

From the information now on hand it appears that the correct taxes are $4,137.10 and *$40,134.03 for the periods* January 1, to April 2, 1922, and *April 2, to December 31, 1922,* respectively, *as stated on the original returns.* (Italics ours.)

10. The executors treated the two letters of July 7, 1925, as statutory deficiency letters, under the provisions of the Revenue Act of 1924, and the Commissioner's determinations therein as the final determination of a deficiency, as defined in that statute, and brought this appeal.

OPINION.

KORNER, *Chairman:* The issue here raised is as to the jurisdiction of this Board to hear and determine the merits of the controversy between the parties. The executors have filed a petition appealing from an alleged final determination by the Commissioner of a deficiency in income tax for the *period from April 2, 1922, to December*

*31, 1922*, due from the estate of the testator. The Commissioner has filed a motion to dismiss the appeal, for the reason that there has not been a determination of a deficiency in tax, as provided by the Revenue Act of 1924, as a predicate for the right of the executors to appeal here.

Stripped to their essential elements, the facts are: The executors made a return of income and tax thereon. Thereafter, they discovered what they insist was error in that they included an item as income which was not income. They filed claims for refund and abatement, supported by an amended return showing the income, and the tax thereon, in a lesser amount. After certain conferences were held, the Commissioner rejected the claims and determined the tax to be as reported by the executors in the returns originally filed by them.

Whether or not jurisdiction obtains turns on whether there was a determination of a deficiency by the Commissioner. Much of the executors' argument was directed to the issue of *determination* as defined in *Appeal of Terminal Wine Co.*, 1 B. T. A. 697, and as applied in *Garneau's Appeal*, 1 B. T. A. 75, and similar cases. We pass for the moment the question of determination, because a mere determination by the Commissioner is, of itself, not sufficient to support jurisdiction. The *determination* from which a taxpayer may appeal is one which fixes the amount of *deficiency* in tax. It is the final decision by which the controversy as to the deficiency is settled and terminated, and by which a final conclusion is reached relative thereto and the extent and measure of the *deficiency* defined. *Appeal of Terminal Wine Co.*, *supra*, p. 701. If, therefore, the determination made by the Commissioner is not the determination of a deficiency as defined by the statute, then jurisdiction does not obtain.

The Revenue Act of 1924 expressly defines the term " deficiency," as follows:

Sec. 273. As used in this title the term " deficiency " means—

(1) The amount by which the tax imposed by this title exceeds the amount shown as the tax by the taxpayer upon his return; but the amount so shown on the return shall first be increased by the amounts previously assessed (or collected without assessment) as a deficiency, and decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax; or

(2) If no amount is shown as the tax by the taxpayer upon his return, or if no return is made by the taxpayer, then the amount by which the tax exceeds the amounts previously assessed (or collected without assessment) as a deficiency; but such amounts previously assessed, or collected without assessment, shall first be decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax.

The facts disclose that a return was filed by the executors for the period in question here. The amount shown as the tax on that return has not been increased by any previous assessment (or collection made without assessment) as a deficiency, nor has the amount shown as the tax upon that return been decreased by any amounts abated, credited, refunded, or otherwise repaid in respect of such tax. This being so, the amount shown as the tax on the return filed by the executors has been in nowise changed by any determination of the Commissioner. The letter of the Commissioner from which this appeal is taken does not find a deficiency. It advised the taxpayer that the original return as filed was correct. It did not advise the executors that the Commissioner proposed to assess a tax greater than that shown by them on their return.

The Commissioner is now proposing to collect the exact amount shown as the tax upon the return as filed by the executors; hence, it can not be said there is a proposal to collect a deficiency in tax, as defined in section 273, above quoted.

But the executors call attention to the fact that they filed a claim for refund (of a portion of the tax paid on the return filed by them) and a claim for abatement (of the portion of the tax remaining unpaid on the return filed by them), and that they also filed an amended return, wherein is shown the tax to be as now computed and contended for by them. They argue from this the following propositions: (1) The return of the executors should be read as a whole, including the amended return and the claims for refund and abatement filed by them; (2) a deficiency may exist in the case of an original erroneous return filed by a taxpayer; (3) the allowance by the Commissioner on March 14, 1925, of the claims of abatement and refund, on the basis of the amended return as filed by the executors, brings this case within the literal provisions of section 273 (1) of the Revenue Act of 1924.

We will discuss the propositions in their order. The Board has shown, in the *Appeal of National Refining Co.*, 1 B. T. A. 236, that no provision is made for the filing of an amended return in either of the Revenue Acts of 1916, 1917, 1918, or 1921. In that appeal the Commissioner contended that, by the filing of an amended return, the taxpayer had extended the period of statutory limitation on the assessment and collection of a tax, in so far as such amended return disclosed taxes in addition to those disclosed by the original return. This contention was based on the theory that, to the extent of such additional taxes so disclosed, the amended return amounted to a limited waiver of the taxpayer to have such additional taxes determined, assessed, and collected within the statutory period running from the date of the filing of such amended return. It is unnecessary to repeat here the reasoning which led to the Board's

conclusion in the opinion in that appeal. Suffice it to say that, in conformity with the decision in that appeal, the Board here holds that an amended return can not be considered such a return as may be taken by this Board as a predicate for jurisdiction of the instant appeal. *Ibid.* p. 241. To the same effect see *Appeal of Mabel Elevator Co.,* 2 B. T. A. 517.

In support of their second proposition (that a deficiency may exist in the case of an original erroneous return filed by a taxpayer), the executors cite *Jackman's Appeal,* 2 B. T. A. 515, and *Appeal of Continental Accounting & Audit Co.,* 2 B. T. A. 761. Both are clearly to be distinguished from the instant appeal. In the *Continental Audit Appeal* the taxpayer filed a document in the form of a return, but did not purport to show *as the tax* the amounts set out in that document. At the time of filing the document, referred to as the return, it annexed to it a statement or protest to the effect that no tax was due from it and that the return was not a true return of its tax liability. The Board held that the statement annexed to the return constituted a part of the return and should not be ignored, and that, when read as a whole, the entire return showed no amount as the tax or showed the tax to be zero.

In the instant appeal these elements are lacking. The executors filed their return and showed thereon certain amounts *as the tax.* Thereafter, they sought to revise this amount and filed an amended return, together with abatement and refund claims, for that purpose. We do not believe the situations just compared are parallel, nor that the *Continental Audit Appeal* is authority for the executors' second proposition.

In *Jackman's Appeal, supra,* the Commissioner determined a deficiency to exist. That deficiency was in accordance with the meaning defined in section 273 of the Revenue Act of 1924. As a defense to the deficiency proposed, the taxpayer set up an overpayment of taxes on its original return. It was not the alleged error in the original return which was taken by the Board as the predicate for its jurisdiction, but it was the statutory deficiency determined by the Commissioner. In line with its decision in the *Appeal of Hickory Spinning Co.,* 1 B. T. A. 409, the Board held that it might consider the overpayment claimed by the taxpayer as a proper defense to an asserted deficiency. *Jackman's Appeal* does not offer a parallel to the instant appeal and does not support the executors' contention here.

The third proposition argued by the executors depends for its premise on a favorable resolution of their first two propositions and must stand or fall with them. Since we conclude that the premise is not well founded, the executors' conclusions to the third proposition must fail.

We are of the opinion that the letters of July 7, 1925, received by the executors from the Commissioner, do not constitute a determination by that officer of a deficiency in tax, as defined by the statute. In view of our position on this point, it is unnecessary to discuss whether the Commissioner's letters constitute a final determination of some other issue between the parties.

The Board is without jurisdiction and the appeal must be dismissed for that reason.